Price, J.
The plaintiff in error was plaintiff in the court below in an action to recover damages from the defendant, The Vil] lageof St. Mary’s,for negligence which caused the death of Agnes Walters, the plaintiff’s intestate.
The facts shown in the record disclose, that on or about the 30 day of June, 1895, a large woolen mill or factory in said village, and which stood near the east end of a public bridge on one of the principal streets, and which spans the Miami and Erie Canal, was destroyed by fire, and that the fire was in some manner so communicated to the north *447 side o£ the bridge constructedjandjsetjjapartjfor pedestrians, that a hole was burned in the same not'far from its east end. The hole was about ten feetjong^east and west, and almost the full width of this sidewalk. The ¡village authorities placed temporary barriers about the open space made by the fire, but it is claimed- by the plaintiffjjthey were insufficient in character and fastenings to properly guard the place and warn persons traveling the street of the presence of danger, and that in the night of the 25th of July of that year, the decedent, while lawfully passing overjthe canal and in the use of the sidewalk on the bridge, without fault on her part and not knowing the existence of the hole, walked into it and fell to the hard bed of the canal, and]thereby sustained fatal injuries.
The plaintiff alleges, that it was the duty of the village to keep the bridge, including the part used by pedestrians, in repair and safe condition for use, and in neglecting to do so, and in neglecting to place and maintain proper guards about the place of danger while the same existed there, it became liable for the injuries sustained.
Inasmuch as the defendant contends, in part, that the petition states no cause of action, we here re-state its averments wherein the negligence of the village is charged:
“The sidewalk referred to and the bridge connected therewith, on the 25th day of July, 1895, and for a long time prior thereto, were placed there for the use of pedestrians and the general public, lawfully walking on or across said bridge, which sidewalk was under the supervision and care of the defendant, whose duty it was to keep the same in safe repair. That upon and fora period of about thirty days prior to the 25th day of July, 1895, the sidewalk upon the north side of said bridge and near the east end thereof, was out of repair, there being a dangerous hole in and thrbugh said sidewalk of some ten feet in length and of the full width of the same; and that the sidewalk where said dangerous hole existed, extended over the Miami & Erie Oanal about fifteen feet above the bed of the canal,and *448 that defendant had notice of said dangerous hole soon after it was made, and attempted to place safe-guards and obstructions around and about said hole to prevent accidents and injuries to persons passing along and upon said sidewalk, but that due and owing to the negligence and want of care of defendant, said dangerous hole in said sidewalk upon the night of said 25th day' of July, 1895, was without safe-guards or obstructions, and was by defendant, upon said night allowed to remain open, exposed and without danger-lights or guards.”
It is next averred, that the decedent, while attempting to cross the bridge at night, accidently stepped into the place of danger and fell to the earth below, and was thereby killed.
First. The village, by answer, denied that it had the care and supervision of the bridge and sidewalk, and denied all allegations of negligence made against it.
Second. As a further defense, it is alleged in the answer, that the bridge and sidewalk mentioned, were a part of the street, and which street is also a state and county road, and had been so for many years prior to the death of plaintiff’s intestate; and that the village had not been at any time entitled to receive any part of the bridge fund of the county, and that it had received no part of said fund, and that the duty to repair and maintain the bridge devolved upon the county commissioners.
Third. The defendant also charges that the fall and death of decedent were caused by her own negligence.
The reply admits that the village had never received any part of the county bridge fund, and that the bridge and street were part of a state and county road as claimed in the answer, and denied that the deceased was negligent.
At the close of the plaintiff’s testimony, the court directed a verdict for the defendant, and rendered judgment accordingly.
The case is here on error to reverse the judgment, and it has been ably argued by counsel for the parties.
*449 It is admitted in the pleadings, and it is a fact conceded in the evidence, that the bridge in question spans the Miami & Erie Canal, and is part of the street running east and west in the village, and. that the street is at that point laid on a long established state and county road; that it was constructed by the county commissioners, and that the village was not entitled to and received no part of the bridge fund levied on property within the same.
It is claimed by the defendant that under the law and according to such facts, it was and is not responsible for the condition of the bridge or the consequences set out in the petition; and we are informed by counsel, that the court below entertained this view, and therefore directed the verdict for defendant.
It is an old statute which makes it the duty of county commissioners to construct and keep in repair all necessary bridges. It dates prior to the revision of Swan & Critchfield, and is now found in sec. 860 of the Revised Statutes, which reads:
“The commissioners shall construct and keep in repair all necessary bridges over streams and public canals on all state and county roads * * * except only such bridges as are wholly in such cities and villages as by law have the right to demand and do receive part of the bridge fund levied upon property within the same. ’ ’
And we refer to sec. 4936, Revised Statutes, which is:
“The commissioners of any county through which any canal or feeder of a canal of this state passes, except such as are built by incorporated companies, shall, at the cost of such county, keep in good repair all bridges, where any state or county road crosses such canals.’’
Also see sec. 4938 to same effect. It seems very clear from these sections, that the duty to maintain and keep in repair the bridge mentioned in this case rested upon the county commissioners, and we know that prior to the amendment of sec. 845,Revised Statutes, made in 1894, there was *450 no remedy against county commissioners for neglect to keep such bridges.in repair and safe condition. It seems the¡re was no remedy for their negligence. See Board of Commissioners v. Mighels, 7 Ohio St. Rep., 110.
But the amendment now provides a remedy for such neglect of official duty.. Vol. 91 O. L., 142,
But it is claimed for plaintiff in error that, notwithstanding the above legislation, there is such care and supervision of the streets, alleys, bridges, etc., enjoined upon cities and villages by another section of the statute, that a right of .action exists against the village of St. Mary’s in this case, and the sec. 2640 provides:
“The council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation, and shall cause the same to be kept open and in repair, and free from nuisance.”
This also, is an old statute. We trace it back as far as an amendment made March 18th, 1859. See 56, O. L., 57, where the section assumed almost its present form as sec. 2640 — 'but it related to cities.
In 1869 the municipal code was adopted,and the old section, was carried into it as sec. 439- (See 66 O. L., 222.)
By. this revision and codification, the rule was extended to cities and villages alike.
By reason of sec. 2640, it is claimed, and, we think, with much reason, that while it was the duty of the county commissioners to construct and keep such bridges in repair, there is a certain degree of care, supervision and control vested in the village council. We have seen that the two classes of legislation — for the commissioners and the council —are of many years standing. If there is any difference, the rule of conduct prescribed in sec. 2640 out-ranks the other in age. Hence it is that the sections should be construed together. Such is the view taken by our supreme *451 court in State ex rel. v. Commissioners, 49 Ohio St., 304, where it is said:
“The duty here imposed is'a part of the general duty to construct and keep in repair all necessary bridges over streams and public canals on all state and county roads imposed on county commissioners by sec. 860, Revised Statutes, and became necessary as a limitation of sec. 2640, Revised Statutes, giving to cities and villages the supervision and control of all public highways and bridges within their corporate limits, and requiring them‘to keep the same in repair and free from nuisance.’ .These sections all relate to the same subject, and must be construed together. As an effect of these provisions, it became the duty of county commissioners to construct and keep in repair all bridges on the public highways of the county, except such bridges as are within cities and villages that have- the right to demand and receive a portion of the bridge fund.”
• Applying the law to the case at bar, we are of opinion that it was not the duty of the village to repair the bridge where it had been burned, as that work was imposed upon the county commissioners.
It does not follow, however, that this fact relieves the .village of the care, control and supervision of the bridge.
There is no conflict of duties between the commissioners and municipal authorities. The former have the control of the bridge fund, and hence-their duty to construct and repair. The latter have no control of the bridge fund, and therefore are not required to either construct or repair. But they do “have the care, supervision and control of all public highways, streets, * * * sidewalks, grounds and bridges within the corporation, and shall cause the same to be kept open * * and free from nuisance. ” And either or both may now be liable for neglect of duties imposed by law.
What were its duties in the case before us?
Several days prior to the fatal injury, fire had burned *452 away a portion of the sidewalk, part of the bridge ten feet in length and the full width of the walk. This made it a place of great danger of which the village had prompt and full knowledge. It undertook to discharge its duty by placing obstructions and barriers about the hole to keep people away from it. It is alleged, and there is evidence in the record tending to prove, that these barriers were not fastened to any permanent object, but were loose and easily removed or thrown down; and the evidence tends also to prove that the village authorities had relaxed their care on the day and night of the injury, so that the barriers were not in place, and that there were no danger signals there to warn pedestrians of the place of danger. We think it is the duty of the village authorities to either temporarily cover the hole, or protect from it by barriers and signals, and to maintain the same in safe condition until the commissioners — 'the proper party — could be notified and make the necessary repairs. Such is the kind of care, supervision and control of the streets and bridges contemplated in sec, 2640. Otherwise it would be of no practical use or benefit, It is a reasonable rule of conduct. This bridge was upon the main thoroughfare of the town, and on each side of it were stores and other places of business. It was in almost constant use, and the village owed it to its citizens, of whom the deceased was one, to safe-guard the scene of danger until repairs could be made. To do so, would be the exercise of the ordinary police power and regulation which is coextensive with the corporate limits; and to neglect so plain a duty would be such negligence as would make the village liable where there is no other element in the case to defeat recovery
It has been repeatedly held in Ohio, that where one having a contract with the village or city for the construction of a sewer or other public improvement, with the knowledge of the municipal authorities, negligently leaves open an ex *453 cavation, or places a dangerous obstruction in the street., without guards or signals, where person or property is injured thereby, the city or village may be held primarily liable, although it was the duty and even the agreement of the contractor to properly guard the place to prevent injury. A full consideration of the proposition with cases cited may be found in case of City of Zanesville v. Fawnman, 53 Ohio St., 605.
We would hold, therefore, that, if there is no other question in the case which defeats recovery,the trial court erred in directing the verdict for defendant.
But we* have another branch of the case in which it is charged in the answer and fairly supported in the testimony, that decedent was guilty of contributory negligence, without which no injury would have occurred. And the presumption of this negligence arises on the plaintiff’s evidence,and is not explained or rebutted.
The size of the opening burned in the sidewalk we have already noticed. The burning of the mills had caused this about thirty days before,and the effects had become somewhat notorious in the village. Quite an accumulation of warped iron and other debris from the mili was near the east entrance to the bridge — the sidewalk part of it. It could not be reached from the west because of a caving in of the earth. The scales east of the entrance a few feet,and which formed part of the street sidewalk,had been burned out — making a break in the walk on that side near the bridge. The steps from the street sidewalk on that side, and which were used to get upon the bridge level, had also been burned — that the perpendicular height there was near twenty inches, so that it required something of an effort to reach the place of danger for all of these reasons.
There was an electric light, if not on center of the bridge, not far from it, and elevated about fifteen feet above bridge. Mrs. Terrell,one of the ladies who was behind deceased,said *454 it was as light there (where the hole was) as electricity -could make it. The light shone brightly on the bridge. Mr. Seasholes,from his window about 200 feet east of the bridge, by this light,saw deceased on the walk. He saw her stand and look for a moment, and then disappear.
G. A. Layton, D. F. Mooney, and Armstrong & Johnson, for Plaintiff in Error.
Solicitor J. T. Sohoonover, and J. H. Goelce, for Defendant in Error.
Another witness said,she looked,and then walked on. All others avoided that part of the bridge. It was with some extra steps and inconvenience that she reached the fatal place. She was not in the exercise of ordinary care and prudence. The facts, about which there is no dispute, clearly established her negligence,
For this reason alone, we affirm the judgment.